**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHAEL SKAKEL<br><br>Plaintiff,<br><br>vs.<br><br>NANCY GRACE, TIME WARNER INC.,<br>TURNER BROADCAST SYSTEM, INC.,<br>and BETH KARAS<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 3:12-cv-01669 (VLB)<br><br><br><br><br><br><br><br><br>January 23, 2013 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION TO DISMISS**

The Plaintiff, **MICHAEL SKAKEL**, respectfully submits this Memorandum of Law in support of his Objection to the Defendants' Motion to Dismiss, dated December 3, 2012.

**BACKGROUND**

The Plaintiff was convicted of murder on June 7, 2002, in connection with 1975 death of Martha Moxley in Greenwich, Connecticut. Prior to, during, and after the trial, the Plaintiff has maintained his innocence, and has sought all avenues of relief available to him for overturning a wrongful conviction. He is currently serving his sentence at the MacDougall-Walker Correctional Institution.

Between January 23 and January 25, 2012, the Defendant, **NANCY GRACE**, interviewed the Defendant, **BETH KARAS**, on the "Nancy Grace" show, broadcasted on HLN. See Compl. ¶ 11. During said interview **GRACE** stated that she and **KARAS**,

“covered” the Plaintiff’s criminal case and that **KARAS**, had actual first hand familiarity with the “in court” evidence at the Plaintiff’s Trial. See Compl. ¶ 13. During same interview, **GRACE** asks **KARAS**: “isn’t it true that the [Plaintiff] apparently was up in a tree masturbating trying to look into her bedroom window,” referring to the victim Martha Moxley. See Compl. ¶ 14. **KARAS**, responded: “well his DNA was found yes . . . up in the tree.” See Compl. ¶ 15. Thereafter, **GRACE** followed up with: “Beth I love the way you put it so delicately, ‘his DNA,’ you know, it was sperm, there I said it, and so he places himself there up in a tree masturbating looking down at her window . . ..” See Compl. ¶ 16. **KARAS** agreed with Grace in relation to her characterization of the Plaintiff’s conduct. See Compl. ¶ 17.

The entire interview, including the aforementioned defamatory statements, was published by the Defendants to a national, possibly world-wide television audience, including viewers in the State of Connecticut. See Compl. ¶ 19. The interview was also uploaded onto Youtube, and transcripts of the interview were circulated on the internet by the Defendants. See Compl. ¶¶ 20-21. The interview was again published by the Defendants on HLNtv.com on April 23, 2012. See Compl. ¶ 22. Both **NANCY GRACE** and **BETH KARAS** know full well, that the statements about the presence of sperm and/or DNA in the tree were patently false. See Compl. ¶ 29. Anyone familiar with the case from covering the Trial, would agree that there was no DNA evidence, and Dr. Henry Lee testified to this fact very clearly. **KARAS** and **GRACE** also knew that the Plaintiff was pursuing various legal remedies challenging and appealing his conviction via post conviction remedies available to him, and at or around the time of publication, the Plaintiff was preparing for a Parole Hearing. See Compl. ¶ 30.

As a result of these statements the Plaintiff filed his Complaint in Connecticut Superior Court. Thereafter the Defendants removed the action to this Court and filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), claiming that (1) the Plaintiff's Complaint fails to allege that any challenged statement is substantially false, (2) the falsity alleged is insufficient to state a claim under the subsidiary meaning doctrine, and (3) the Plaintiff's Complaint fails to allege anything more than incremental reputational harm. See Defs. Mem., at 1-2.

The Plaintiff respectfully objects to the Defendants' Motion for the reasons set forth herein.

## ARGUMENT

### I. STANDARD OF REVIEW

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011), citing Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir.2006). The issue to be resolved upon a 12(b)(6) motion "is not whether a plaintiff will or might ultimately prevail on [his] claim, but whether [he] is entitled to offer evidence in support of the allegations in the complaint." Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College, 128 F.3d 59, 62 (2d Cir. 1997). In ruling on such a motion, the Court "must accept as true all the factual allegations in the complaint, and must draw all reasonable inferences in favor of the plaintiff." Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740 (1976). Furthermore, the Court should "assume all 'well-pleaded factual allegations to be true, and determine

whether they plausibly give rise to an entitlement to relief." Faber v. Metropolitan Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011).

Moreover, the court "does not ordinarily look beyond the complaint and attached documents in deciding a motion to dismiss brought under the [12(b)(6)] rule." Halebian, at 130, citing Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir.2008). When presented with any additional documents, such as the exhibits attached to the Defendants' Motion, the Court must "exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed.R.Civ.P. 56." Kopec v. Coughlin, 922 F.2d 152, 154 (2d Cir. 1991). When the Court elects to convert the motion, it must "afford all parties the opportunity to present supporting material." Id.; see also, Peck v. Baldwinsville School Bd. of Educ., 7 Fed. Appx. 74, 75 (2d Cir. 2001) ("all parties shall be given reasonable opportunity to present all pertinent materials.").

## II. COMPLAINT STATES A PRIMA FACIE CLAIM FOR DEFAMATION

### *a. Defamation in General*

Under Connecticut State law, "[t]o establish a prima facie case of defamation, the Plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." Thibodeau v. American Baptist Churches of Conn., 120 Conn.App. 666, 678-79 (2010), citing Cweklinsky v. Mobil Chemical Co., 267 Conn. 210, 217 (2004). Furthermore, statements may be defamatory per se if they charge crimes. See Battista v. United Illuminating Co., 10 Conn. App. 486, 490 (1987).

When the Plaintiff is the subject of a statement that is defamatory per se, injury is presumed, and the Plaintiff is entitled to general damages without proof of actual damages and is not required to plead or prove the injury. Id. "To fall within the category of [statements] that are actionable per se because they charge a crime, the [statement] must be one which charges a crime which involves moral turpitude or to which an infamous penalty is attached." Gambardella v. Apple Health Care, Inc., 86 Conn. App. 842, 851 (2005). "[M]oral turpitude involves an act of inherent baseness, vileness or depravity in the private and social duties which man does to his fellow man or to society in general, contrary to the accepted rule of right and duty between man and law." Moriarty v. Lippe, 162 Conn. 371, 383 (1972). Finally, with respect to pleading defamation, Connecticut State law only requires that the Plaintiff plead "four essential elements: (1) a false statement of fact; (2) unprivileged publication of the statement; (3) publication caused by negligent or intentional conduct; and (4) injury to reputation." Cweklinsky, at 217.

In the present case, the Plaintiff's Complaint unambiguously states (1) the statements of fact made by the Defendants, (2) that said statements are not "protected speech,"[1] (3) that the publication was made intentionally and with malice[2], and (4) that the Plaintiff suffered injury to his reputation.[3] The Defendants' statements misstate and/or imply a misstatement of the evidence against the Plaintiff in his murder prosecution. This description amounts to an accusation of crimes of moral turpitude such as

---

[1] See Compl. ¶18.

[2] See Compl. ¶29.

[3] See Compl. ¶¶ 35-37. The Plaintiff also alleged Defamation per se in other counts, which does not require pleading of injury. See Battista, at 490.

attempted stalking[4] and/or public indecency.[5] Consequently, on its face the Complaint is a sufficient statement of all defamation claims for relief and should not be dismissed. See Halebian, at 130.

***b. Substantial Falsity***

The requirement of proof of falsity by a plaintiff in a defamation case arises out of a "general proposition that freedom of expression upon public questions is secured by the First Amendment." New York Times Co. v. Sullivan, 376 U.S. 254, 269 (1964). Specifically, "a public-figure plaintiff must show the falsity of the statements at issue in order to prevail in a suit for defamation." Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 775 (1986). Similarly, where a "plaintiff is a private figure and the [published statements] are of public concern … the common law's rule on falsity—that the defendant must bear the burden of proving truth—must similarly fall here to a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages." Id., at 776.

Use of the term "substantial falsity" by the Defendants appears to arise out of the language used in some jurisdictions in connection with the affirmative defense of "truth," or "substantial truth," wherein the Defendant ordinarily bears the burden of proof. For example, in the case relied upon by the Defendants in their memorandum, the U.S. Supreme Court held that because "California law permits the defense of substantial truth" and due to First Amendment concerns, "of course, the burden is upon [the plaintiff] to prove *falsity*." Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516-17

[4] See C.G.S.§ 53a-181d and 53a-181e.

[5] See C.G.S. § 53a-186.

(1991) (emphasis added). Moreover, the term "substantial truth" means nothing other than the opposite of ordinary "falsity." See Masson, at 516 ( "[t]he common law of libel takes but one approach to the question of falsity, regardless of the form of the communication … [i]t overlooks minor inaccuracies and concentrates upon substantial truth.").

i. The Plaintiff is not a Public Figure and the Statements are Not Matters of Public Concern

In determining whether an individual is a public figure, "the court should examine the nature and extent of [the] individual's participation in the particular controversy giving rise to the defamation." Cox v. Galazin, 460 F.Supp.2d 380, 389 (D.Conn. 2006), citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 352 (1974). The burden is on the Defendants to show that "the plaintiff has: (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of the litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media." Stack v. Jaffee, 248 F.Supp.2d 100, 106 (D.Conn. 2003), citing Lerman v. Flynt Distr. Co., 745 F.2d 123, 136-37 (2d Cir. 1984). One is certainly not a "public figure" if he is "drawn into a public forum largely against his . . . will." Jensen v. Times Mirror Co., 634 F.Supp. 304, 311 (D.Conn. 1986). This proposition is writ larger when the defendants themselves have placed the Plaintiff into the public eye. Id. (stating defendants may not act so as to create a public figure status and obtain the "attendant enhanced protection that would be given to their publications").

More importantly, when it comes to person's notoriety for criminal conduct, the U.S. Supreme Court has stated unambiguously, that it rejects "the further contention… that any person who engages in criminal conduct automatically becomes a public figure for purposes of comment on a limited range of issues relating to his conviction." Wolston v. Reader's Digest Ass'n, Inc., 443 U.S. 157, 168 (1979). As the Supreme Court aptly pointed out, defendants in a criminal matter are "drawn into a public forum largely against their will in order to attempt to obtain the only redress available to them or to defend themselves against actions brought by the State or by others. There appears little reason why these individuals should substantially forfeit that degree of protection which the law of defamation would otherwise afford them simply by virtue of their being drawn into a courtroom." Id., at 169.

When it comes to "matters of public concern," the purportedly protected speech must "be fairly considered as relating to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983). Additionally, public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public *at the time of publication*." City of San Diego, Cal. v. Roe, 543 U.S. 77, 83-84 (2004) (emphasis added). Deciding whether speech is of public or private concern requires the Court to examine the "content, form, and context of that speech, *as revealed by the whole record*." Snyder v. Phelps, 131 S.Ct. 1207, 1216 (2011) (emphasis added). "In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." Id.

In the present case, the Plaintiff achieved public recognition by virtue of being convicted in 2002, for a murder that took place in 1975. Despite, the Defendants' question begging contentions and assurances that "[t]here can be no serious dispute the plaintiff is a public figure for purposes of this libel action," (Defs. Mem., at 14; fn. 5) the burden is on them to show how a Plaintiff who was dragged unwillingly into the spotlight by the prosecuting authority, invited attention to himself, and therefore transformed himself into a public figure. Jaffee, at 106. Notably, the burden is more overwhelming in light of the Supreme Court's clear position that merely engaging in criminal conduct does not "automatically" make one a public figure. Wolston, at 168. In any event, the Defendants did not provide evidence or argument whatsoever, that would supplant or sustain this burden, or otherwise create a record that would allow the Court, at this juncture, to make a determination that the Plaintiff is, or is not, a public figure.

Similarly, there is serious question as to whether or not the Defendants' commentary on an 11 year old trial and conviction is a "matter of public concern" a decade after this controversy was first brought to the attention of the public. At the very least, short of the Plaintiff's Complaint and the Defendants' Motion, there is no record before this court which would allow it to decide whether the Defendants' statements are of public or private concern. See Snyder, at 1216.

Simply put, there are two possibilities. One is that the Plaintiff is not a public figure and/or the statements in question are not of public concern, the other is that there is no evidence and no record upon which the court could rule otherwise. Thus, either the requirement of proving or pleading "substantial falsity" does not apply to this case, or the application of the requirement calls for examination of the evidence and merits of

this case that are far beyond the scope of the Defendants' motion to dismiss, thus making it an inappropriate vehicle to address this issue.

ii. Plaintiff Not Required to Plead Substantial Falsity

In their Memorandum, the Defendants erroneously claim that the Plaintiff in this case "must bear the full burden of *pleading* and proving that the statements he challenges are materially false." See Defs. Mem.,at 9 (emphasis added). The Defendants appear, in their Memorandum, to rely on Masson and Hepps for this proposition. However, as discussed supra, "substantial truth" is merely the opposite of ordinary falsity. See Masson, at 516. In fact, the Supreme Court in both Hepps and Masson used the term "falsity" (not "substantial falsity") when allocating the burdens of proof between parties. See Hepps, at 775; see also, Masson, at 517-16. Moreover, none of the cases cited by the Defendants indicate that the Plaintiff is actually required to plead anything in addition to the common law elements of defamation. The relevant legal precedent merely allocates the burden and the quality of proof without demanding any special pleading. The Defendants' talismanic invocation of "substantial" is not rooted in the law; the Plaintiff's Complaint adequately pleads the requisite elements, and this aspect of the cause of action. See Compl. ¶ 18 ( "The **GRACE** and **KARAS COMMENTS** are false…").

iii. The Challenged Statements are Not Substantially True

Even if the Plaintiff has the burden of proving that the statements in question are false, the Defendants simply cannot prevail on their claim that the Complaint should be dismissed because he cannot "prove" the falsity ("substantial" or otherwise). However,

in ruling on this motion, the Court should “assume all ‘well-pleaded factual allegations to be true,” including the allegation that said statements were false. See Faber, at 104.

Essentially, the Defendants are inviting the Court to go outside of the pleadings, and pass judgment on the merits of the case based solely on the Complaint, the legal conclusions in the Defendants’ memorandum, and excerpts of trial testimony attached thereto. Even if the court were to entertain this approach, the testimony of a trial witness, subject to failing memories, biases and interpretation, is not of the same quality as hard, unfeeling and scientific evidence of sperm and DNA. The Defendants didn’t just rehash what was said at trial. They seek to use out of court statements, which are being “attributed” to the Plaintiff; tantamount to “someone heard it so it must be true.” They did not just rehash the old evidence used at Trial—nor could they, because no such evidence exists.

The Defendants played on the public’s view of DNA; put quite simply, when you talk about DNA that was found, in the same breath as a crime, it implies guilt, with infallible evidence to support it. This is not the case in the Plaintiff’s trial, and the implication and innuendo is obvious. The Defendants knowingly and falsely stated to the public that there was scientific evidence, not subject to the shortcomings and skepticism associated with hearsay testimony, that the Plaintiff was in fact engaging in conduct which constituted crimes of moral turpitude, other than the murder of which he was convicted. Because the Plaintiff is a “Kennedy nephew” the Defendants sought to sensationalize this for their viewers, at or around the time that the Plaintiff was exercising his legal rights to apply for Parole. The timing is not a coincidence, and the motive is obvious. At the time, both **KARAS** and **GRACE** were presumably well

acquainted with the fact that Tony Bryant, who was interviewed by Private Investigators identified an African American and an Asian, as persons he believed to be the perpetrators based on witnessing certain events in or about the time of the incident; he described events the evening of the murder, and recalled statements made by those persons, consistent with the cause of the victim's death. It is common knowledge that there is an African American and an Asian hair collected from the immediate area of the victim's body, which remain in the custody of the State of Connecticut, and have yet to be subjected to DNA analysis. There can be no doubt underlying the motives of **KARAS** and **GRACE**; they seized upon a falsehood that sensationalized the Plaintiff's conduct, especially because he is a relative of the Kennedy family.

***c. Subsidiary Meaning***

i. Doctrine of Subsidiary Meaning is Not Applicable to This Case

In their Memorandum, the Defendants claim that the doctrine of subsidiary meaning applies to this case because the Plaintiff is a "public figure." See Defs. Mem., at 14. However, as discussed more fully in section II (b)(i) supra, the Plaintiff is not a public figure if his "publicity" is attributable to his criminal trial and conviction. On the contrary, he was dragged into the public eye against his will and as a consequence of his exercise of his constitutional right to defend himself against accusations of murder. Moreover, it was the media, including the very Defendants in this case, that made him a "public figure," and are now trying to reap the benefit of a "defense" associated with such a status. See Jensen, at 311; see also, Wolston, at 168-69.

Moreover, the burden is on the Defendants to prove that the Plaintiff is in fact a "public figure." See Stack, at 106; see also, Lerman, 136-37. This is a burden which they cannot sustain by simply making a bold assertion on a Motion to Dismiss, that "[t]here can be no serious dispute the plaintiff is a public figure for purposes of this libel action." See Defs. Mem., at 14; fn.5. There is simply no legal authority that dilutes their burden to the level of mere accusation.

Consequently, unless and until the Defendants can actually satisfy their burden of proof, and show affirmatively that the Plaintiff is in fact a public figure, the application of the subsidiary doctrine is inappropriate, placing the cart before the horse. Certainly, at this juncture in the proceedings, the Defendants request for dismissal is inappropriate.

ii. Defamatory False Statements are Not Subsidiary to the Larger Thrust of the Publication by the Defendants

Even if the Plaintiff is a "public figure," the subsidiary meaning doctrine is not applicable to the defamatory statements because they were not "subsidiary" to the larger thrust of the interview on HLN. Under the subsidiary meaning doctrine, "when a published view of a plaintiff is not actionable as libel, other statements made in the same publication are not actionable *if they merely imply the same view*, and are simply an outgrowth of and subsidiary to those claims upon which it has been held that there can be no recovery." Church of Scientology Intern. v. Behar, 238 F.3d 168, 175 (2d Cir. 2001) (emphasis added). The Defendants maintain that "[t]he presence or absence of DNA evidence at Plaintiff's trial is only defamatory to the extent that it supports the larger implication that he is guilty of the murder, but plaintiff has no claim for defamation

based on any implication of his guilt—he is a convicted murderer." Defs. Mem., at 14. The Defendants misapprehend the nature of the Plaintiff's Complaint and injury. It is not that the Plaintiff contends that they merely added an additional, erroneous, or false piece of "evidence" to the actual evidence that was used against him at Trial. Said statements amounted to an accusation against the Plaintiff of additional crimes, and acts of moral turpitude; that which is interjected is completely unnecessary and/or unrelated to the murder conviction. This is a long way away from mere "bolstering." <u>See</u> Section II (a), <u>supra.</u>

Even if this Court were to consider evidence outside of the Plaintiff's Complaint which the Defendants submitted in support of their Motion[6], the testimony of a trial witness, subject to failing memories, considerations of hearsay, biases and interpretation, is not of the same quality as hard, unfeeling and scientific evidence of sperm and/or DNA. The Defendants didn't just rehash what was said at trial. They did not just rehash the old evidence used to convict the Plaintiff of murder. The Defendants knowingly and falsely stated to the public that there was scientific evidence, not subject to skepticism associated with hearsay testimony, and other considerations of credibility, that the Plaintiff engaged in conduct which constituted crimes of moral turpitude, other than the murder of which he was convicted. The statements that the Plaintiff's DNA and sperm were found at the location sought to impart scientific credibility and scientific

---

[6] <u>See</u> <u>Kopec</u>, at 154 (the court must "exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed.R.Civ.P. 56."); <u>see</u> <u>also</u>, <u>Peck</u>, at 75 (where a court converts a motion to dismiss into a summary judgment motion "all parties shall be given reasonable opportunity to present all pertinent materials.").

certainty not only to his pre-existing conviction, but also to the accusation that he was committing other crimes in public.

Simply put, the statements accuse the Plaintiff of crimes other than murder, and as such they are not in any way "subsidiary" to the general thrust of the story about said murder. The statements do not "imply the same view" that he is a "murderer", they imply an additional and separate view that he was engaged in other lewd criminal conduct. Therefore, the statements are actionable on their own, and the Plaintiff's Complaint should not be dismissed.

### *d. Incremental Harm Doctrine*

The "incremental harm" doctrine is a creature of state law and is not "compelled as a matter of First Amendment protection for speech." Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 523 (1991). This doctrine is a "branch" of the "libel-proof plaintiff" doctrine which "measures the incremental harm inflicted by the challenged statements beyond the harm imposed by the rest of the publication." Herbert v. Lando, 781 F.2d 298, 311 (2d Cir. 1986). Simply put, the incremental harm doctrine "reasons that when unchallenged or non-actionable parts of a publication are damaging, an additional statement, even if maliciously false, might be non-actionable because it causes no appreciable additional harm." Behar, at 176. The Defendants essentially invoke the "road kill" theory of reputation to claim no possible harm could befall the Plaintiff as a result of the damaging statements—he's already fully damaged. Their position fails to acknowledge the Plaintiff's reputational interest as germane to future parole applications, future trial prospects, and any and all other discretionary benefits that he may, as a matter of law or right, seek in prison, or in our Courts. Moreover, the

position fails to acknowledge the connection between Defendant's reputation, and his rehabilitation and reintegration prospects, which would include a continuing relationship with his son, family, and others who would come forward to assist and/or support the Plaintiff with respect to the same.

i. Defendants' Motion is Not Appropriate

The Defendants correctly point out that the "incremental harm" doctrine is recognized in the Second Circuit. See Defs. Mem., at 16; see also, Jones v. Globe International Inc., 1995 WL 819177 *5 (D.Conn. 1995) ("The second circuit has recognized that a plaintiff's reputation with respect to a specific subject may be so badly tarnished that he cannot be further injured by allegedly false statements on that subject."). However, it does not appear that the doctrine is firmly rooted in the State of Connecticut. Beyond the two cases cited in the Defendants' Memorandum, there is no additional authority on the subject of "incremental harm" in the State of Connecticut. See Defs. Mem., at 16, citing Jones v. Globe International Inc., 1995 WL 819177 (D.Conn. 1995) and Allan v. Hartford Courant, 2001 WL 291162 (Conn. Super. 2001). The Defendants fail to further recognize that when applied in Connecticut, incremental harm must be raised by way of an affirmative defense. See Allan v. Hartford Courant, 2001 WL 291162*2 (Conn. Super. 2001).

In the present case the Defendants have not filed an Answer and have not pled affirmative defenses to the Plaintiff's claims. Thus they are asking the Court to rule upon an issue that is not before it at this time. Essentially, the Defendants are asking for a summary judgment on an affirmative defense they have not pled or submitted proof in support of. Clearly, a Motion to Dismiss is not the appropriate vehicle, since it is

not the Plaintiff's burden to prove that the harm was not "incremental," but rather the Defendants' that it was "incremental."

ii. Plaintiff Suffered an Additional Actionable Harm

Even if this Court were to consider the application of the "incremental harm" doctrine on a Motion to Dismiss, the Defendants' defamatory statements caused the Plaintiff "appreciable additional harm." As discussed at length in Sections II (b)(iii) and II (c) (ii) supra, the defamatory statements amounted to an accusation against the Plaintiff of additional crimes and acts of moral turpitude, other than murder. Thus added to the harm of potentially having a reputation as a "murderer," was the harm of having acquired a reputation as somebody who engaged in lewd conduct. This additional harm must be treated as a distinct and separate actionable harm that is not extinguished by the fact that the Plaintiff may already have a reputation as a "murderer." This was precisely the issue raised by Justice Scalia (while he was still a Circuit Court Judge) when he so eloquently opined on the application of "incremental harm" :

> "[t]he theory must be rejected because it rests upon the assumption that one's reputation is a monolith, which stands or falls in its entirety. The law, however, proceeds upon the optimistic premise that there is a little bit of good in all of us-or perhaps upon the pessimistic assumption that no matter how bad someone is, he can always be worse. It is shameful that Benedict Arnold was a traitor; but he was not a shoplifter to boot, and one should not have been able to make that charge while knowing its falsity with impunity. So also here. Even if some of the deficiencies of philosophy or practice which the appellees' articles are lawfully permitted to attribute to the appellants (which is not necessarily to say they are true) are in fact much more derogatory than the statements under challenge, the latter cannot be said to be harmless. Even the public outcast's remaining good reputation, limited in scope though it may be, is not inconsequential. ('He was a liar and a thief, but for all that he was a good family man.')"

Liberty Lobby, Inc. v. Anderson, 746 F.2d 1563, 1568 (DC Cir. 1984), vacated on other grounds, 477 U.S. 242 (1986). Similarly, a conviction for murder should not preclude

the Plaintiff from seeking redress for being accused of stalking and/or other crimes included in the sphere of conduct alleged.

## III. PLAINTIFF'S COMPLAINT STATES A PRIMAFACIE CASE FOR FALSE LIGHT

Under Connecticut State law, "[i]n order to establish invasion of privacy by false light, the plaintiff must show (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Miles v. City of Hartford, 719 F.Supp.2d 207, 216 (D.Conn. 2010). In order to successfully plead a false light privacy claim the Plaintiff must allege that "the matter published concerning the plaintiff (1) is not true ... and (2) is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." Goodrich v. Waterbury Republican American, 188 Conn. 107, 131 (1982).

Here, the Plaintiff's Complaint sufficiently states a cause of action for false light invasion of privacy. See Compl., Ninth Count; ¶¶ 1-40. The Defendants do not contest that the pleadings fail to include essential elements of the claim. Instead, the Defendants argue that the claim fails for the same reasons attributable to the defamation claims, and that First Amendment concerns do not permit the Plaintiff to perform an "end run around the First Amendment" by way of a false light claim. See Defs. Mem., at 18-19. Consequently the arguments raised by the Plaintiff in Section II supra are equally applicable to this claim and are hereby incorporated by reference.

It should be further noted that the "incremental harm" doctrine is not a creature of First Amendment jurisprudence and consequently cannot be applied to the Plaintiff's

false light claim, because the same concerns of “end running” around the First Amendment are not present. Moreover, the Defendants do not point to any authority (and there does not appear to be any) which states that “incremental harm” defense is applicable to a false light claim under Connecticut State law.

## CONCLUSION

Essentially, the Defendants assert a “road kill” theory of reputational harm—namely, that Michael Skakel’s reputation can’t be harmed any more that it already is, based upon his having been convicted of murder. According to the Defendants, he is a “libel proof” Plaintiff. This view fails to account for other aspects of the Plaintiff’s reputation, in a manner so aptly expounded upon by now Supreme Court Justice Scalia; basically, that there are rungs to our reputations, aspects which remain undamaged and worth preserving, which are not extinguished simply because of a murder conviction. To think otherwise is a dangerous legal proposition, undermining commonly held notions of human worth, and systemic goals alive and well in our criminal justice system. On the Defendants’ theory, even the convicted murderer who is later freed by DNA evidence which completely exonerates him, should expect his complete innocence to be trampled upon without redress, by the press, in the name of First Amendment--to have the positive rungs of his reputation ignored, and his original good reputation forgotten, even against the backdrop of a recent declaration of innocence, as if the only relevant portion or aspect of the man is the life he led as a once-convicted murderer. The view ignores the necessary evolution of legal truths; something established by law in one instance, does not necessarily persist in subsequent instances, since collateral proceedings, and new evidence can reverse that truth. The First Amendment was never designed to lead

our Courts to such absurdity, or to develop a body of case law propagating such public policy—it undermines the entire Appellate process itself, relegating real rights of a criminal defendant, and real reputational interests of a criminal defendant, to mere lip service. Furthermore, it undermines the goals of rehabilitation and the concept of successful reintegration into society, both of which are well established considerations in our criminal justice system. There is a balancing act between competing rights that needs to be undertaken in this case, and our law is not so clear at this juncture that the Plaintiff's claims should be dismissed at this early stage.

Based on the pleadings and facts construed in the light most favorable to the Plaintiff, as well as on the law and arguments presented in this Memorandum, this Court should deny the Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

THE PLAINTIFF,
MICHAEL SKAKEL
By_*/s/ Stephan Seeger*
Stephan Seeger, Esq
(Juris No. 415349)
Law Offices of S.J. Carriero & Associates, LLC
810 Bedford Street, Suite #3
Stamford, CT 06901
Tel: (203) 273-5170
Fax: (203) 357-0608
Seegerkid2@aol.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 23, 2013, a copy of the foregoing document was filed using the CM/ECF system, which will send notification of such filing to:

Cameron Stracher, Esq.
4 North Pasture Rd.
Westport, CT 06880
Phone / Fax: (203) 222-7169
Email: cam@stracherlaw.com
Attorney for Defendants

*_/s/ Stephan Seeger*

Stephan Seeger (Juris No. 415349)
Law Offices of S.J. Carriero & Associates, LLC
810 Bedford Street, Suite #3
Stamford, CT 06901
Tel: (203) 273-5170
Fax: (203) 357-0608
Seegerkid2@aol.com