## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **MICHAEL SKAKEL,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO.** |
| | : | **3:12-CV-01669 (VLB)** |
| **v.** | : | |
| | : | |
| **NANCY GRACE, BETH KARAS,** | : | |
| **TUNER BROADCAST SYSTEM, INC., and** | : | |
| **TIME WARNER, INC.,** | : | |
| **Defendants.** | : | **March 7, 2014** |

### MEMORANDUM OF DECISION DENYING DEFENDANTS' MOTION TO DISMISS COMPLAINT [Dkt. #10]

### I.      Introduction

The Plaintiff, Michael Skakel ("Skakel"), brings this action against Defendants Nancy Grace, Beth Karas, Turner Broadcast System, Inc., and Time Warner, Inc. alleging libel, slander, and false light invasion of privacy in nine counts.  Defendants have moved to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  For the reasons that follow, Defendants' Motion to Dismiss is DENIED.

### II.      Factual Background

The following facts and allegations are taken from Plaintiff's complaint.

Michael Skakel was convicted in June 2002 of the 1975 murder of Martha Moxley.  [Dkt. 1, Compl. ¶12].  Nearly ten years after his conviction, Skakel took part in a Sentence Review Hearing, a hearing procedure at which he argued that his sentence was wrongful and/or subject to reduction.  [*Id.*].  Shortly after

1

Skakel's Hearing, between January 23 and January 25, 2012, Nancy Grace interviewed guest Beth Karas on "The Nancy Grace Show."  [*Id.* at ¶¶11, 12]. "The Nancy Grace Show" airs on the cable news station HLN, which is owned and/or operated by Turner Broadcasting Systems, Inc. ("TBS"), which in turn is a wholly owned subsidiary and/or division of Time Warner Inc., one or both of which also own cable station TruTV.  [*Id.* at ¶¶2, 5, 6].  Karas is a legal expert for cable and network news programming and is also a former Assistant District Attorney for New York City.  [*Id.* at ¶23].  She acts as a correspondent for Court TV and the program "In Session," for which she provides coverage of court trials. [*Id.* at ¶24].

Grace prefaced the interview with Karas by noting that she and Karas had covered the Skakel trial and that Karas had been present in court during the trial, which Plaintiff contends "set[ ] the stage for viewers and listeners, and reinforce[ed] both Defendants' knowledge and experience with the case, including, but not limited to, Defendant Karas' actual first hand familiarity with the 'in court' testimony and evidence at Michael Skakel's trial."  [*Id.* at ¶13].  During the interview, Grace asked for the "crux" of the facts of the case, which Karas relayed.  Grace then asked the following: "isn't it true that the Kennedy cousin [Skakel] apparently was up in a tree masturbating trying to look into [Moxley's] bedroom window?"  [*Id.* at ¶14].  Karas responded: "well his DNA was found yes . . . up in the tree."  [*Id.* at ¶15].  Grace then stated, "Beth I love the way you put it so delicately, 'his DNA,' you know, it was sperm, there I said it, and so he places himself there up in a tree masturbating looking down at her window, and whoa

she [Moxley] turns up dead within a couple of hours."  [*Id*. at ¶16].  As Grace stated "it was sperm," and before she had finished her prior comment, Karas uttered the word "correct" in the affirmative.  [*Id*. at ¶17].

This exchange was widely broadcast nationally on various broadcast and social media outlets.  It appeared on the TBS Networks, including national networks HLN and TruTV.  [*Id*. at ¶¶6, 20].  Defendants made Grace's interview with Karas available on YouTube on or about January 25, 2012, and the written transcript of the interview was published on the internet at http://edition.cnn.com. [*Id*. at ¶¶20, 21].  The interview was also re-aired on the HLNtv.com website as part of an April 23, 2012 written update entitled "Kennedy Cousin [Skakel] Asks Judge for Shorter Jail Time," and automatically plays as a video upon visiting the page of the update.  [*Id*. at ¶22].

The Plaintiff alleges that, having covered the trial, both Grace and Karas were "thoroughly familiar with the fact that there was no DNA evidence linking Michael Skakel to the murder of Martha Moxley, and that his DNA was not found anywhere on her body, clothing, in a tree, or elsewhere."  [*Id*. at ¶25].  Further, both Grace and Karas, "through their own investigative reporting or via other reports, were aware that Michael Skakel agreed to provide DNA samples to the State of Connecticut shortly before his trial, at the behest of prosecutors, however, the prosecutors withdrew their request for the same."  [*Id*. at ¶26].  The complaint states that Grace and Karas have "remained aware of post conviction developments in Michael Skakel's case, and have reported upon or been involved in the reporting of many of said developments," and are also familiar with

3

Skakel's Petition for New Trial, a witness's "statements and interview implicating two others (one Asian American and one African American male) in the murder of Martha Moxley," and that DNA analysis "may figure into identifying an African American and an Asian hair that were collected with Martha Moxley's body as evidence in the case." [*Id*. at ¶¶27, 28]. Moreover, the Defendants were aware that Skakel was "pursuing various legal remedies challenging and appealing his conviction via recognized legal processes, and making application for the privilege of parole." [*Id*. at ¶30]. The Defendants at all times knew the oral statements made in the interview regarding Skakel's DNA or sperm to be false, and intentionally, maliciously, and/or in reckless disregard of the truth continued to air and publish the comments. [*Id*. at ¶¶18, 29].

Skakel alleges that he had an interest in protecting his reputation for various purposes including (1) maximizing potential for acquiring any privilege or benefit that could be conferred upon him by the State of Connecticut, the Department of Corrections, or the Parole Board; (2) ensuring that any future remedy, including reversal of conviction or a new trial, is not "diminished by a tainted jury pool, or fact finder, who may be influenced by false claims reported in the media;" (3) and preserving, maintaining and/or salvaging a positive reputation in spite of his incarceration for murder. [*Id*. at ¶¶31-33]. Finally, Skakel alleges that, as a result of the Defendants' actions, he has suffered "shame, scorn, ridicule, hatred, mistrust, contempt, disgust and/or public opprobrium," "members of the public have been led to believe that he is an individual with an

aberrant personality," and people are now deterred "from associating with or dealing with" the Plaintiff.  [*Id.* at ¶¶34-36].

### III.   Standard of Review

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' "  *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-

pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005)(MRK).

## IV.   Discussion

The Plaintiff alleges nine claims against the Defendants, as follows: Slander (count one); Slander Per Se (count two); Libel, by publishing the written transcript of the Grace/Karas interview on the internet (count three); Libel Per Se, by publishing the written transcript of the interview on the internet (count four); Libel, for rebroadcasting the interview on the website (count five); Libel Per Se, for rebroadcasting the interview on the website (count six); Libel, for the creation and publication of the YouTube video (count seven); Libel Per Se, for the creation

6

and publication of the YouTube video; and False Light Invasion of Privacy (count nine).  Defendants urge the Court to dismiss Skakel's defamation claims for three reasons: first, because the complaint fails to allege that any statement is substantially false; second, because the falsity alleged is insufficient to state a claim under the subsidiary meaning doctrine; and third, because the complaint fails to allege anything more than incremental reputational harm.  Defendants also argue that Skakel has failed to state a viable false light invasion of privacy claim because such claim is based on his non-cognizable defamation claims.

As an initial matter, the Defendants request that the Court consider documentary evidence outside the scope of the complaint in this case, namely transcripts of the testimony of three witnesses at Plaintiff's murder trial.  In deciding a motion to dismiss, a court may consider materials of which it may take judicial notice and "may … look to public records, including complaints filed in state court."  *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).  While the testimony from Mr. Skakel's murder trial is a type of public record, the Defendants have referenced it in order to prove the substantial truth of the statements they uttered.  This Court steadfastly disagrees with the Defendants' assertion that their statements were substantially true at this stage, as will be discussed *infra*, even in the face of this trial testimony (which does not discuss whether DNA evidence was found at the scene), and thus will not consider it.  This Court also declines to convert this motion to dismiss into a motion for summary judgment, as sufficient notice has not been afforded such that the parties may present all relevant evidence.

7

The Court will first review the law of defamation and then address the Defendants' arguments in turn.

### a. Defamation

Under Connecticut law, "[a] defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627 (Conn. 2009). "To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Id.* at 627-28; *Rafalko v. Univ. of New Haven*, 129 Conn. App. 44, 53 (Conn. App. Ct. 2011) (same). As to the first element, a defamatory statement is defined as "a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Gambardella*, 291 Conn. at 627. A statement must be false to be actionable as defamation. *Cwelinsky v. Mobil Chemical Co.*, 267 Conn. 210, 228–29 (Conn. 2004); *Nodoushani v. S. Connecticut State Univ.*, NNHCV065007490S, 2012 WL 2547498 (Conn. Super. Ct. June 4, 2012).

Defamation is comprised of the torts of libel and slander: slander is oral defamation and libel is written defamation. *Mercer v. Cosley*, 110 Conn. App. 283,

297 (Conn. App. Ct. 2008).  With each publication of a defamatory statement by a defendant, a new cause of action arises.  *Cweklinsky*, 267 Conn. at 217.

Additionally, if a plaintiff claiming defamation is a public figure, he must prove "that the defamatory statement was made with actual malice, such that the statement, when made, was made with actual knowledge that it was false or with reckless disregard of whether it was false."  *Gambardella*, 291 Conn. at 628 (internal quotation marks and citations omitted).  "A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth."  *Hopkins v. O'Connor*, 282 Conn. 821, 846 (Conn. 2007) (citing *Abdelsayed v. Narumanchi*, 39 Conn. App. 778, 781 (Conn. App. Ct. 1995), cert. denied, 237 Conn. 915, 676 A.2d 397, cert. denied, 519 U.S. 868, 117 S. Ct. 180, 136 L.Ed.2d 120 (1996)).  To recover punitive damages, a plaintiff must prove malice, regardless of whether the plaintiff is a public figure.  *Gambardella*, 291 Conn. at 628.

Defamation is also actionable *per se*.  "In general, there are two classes of libel that are actionable per se: (1) libels charging crimes and (2) libels which injure a man in his profession and calling."  *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 842, 850 (Conn. App. Ct. 2005).  Slander is similarly actionable if it charges a crime.  *Tax Data Solutions, LLC v. O'Brien*, NNHCV106016263, 2013 WL 951151 (Conn. Super. Ct. Feb. 6, 2013); *Lamson v. Farrow*, NNHCV084029172S, 2012 WL 335853 (Conn. Super. Ct. Jan. 10, 2012).  To be actionable *per se*, "the [defamation] must be one which charges a crime which involves moral turpitude or to which an infamous penalty is attached."

*Gambardella*, 86 Conn. App. at 850.  "The modern view of this requirement is that the crime be a chargeable offense which is punishable by imprisonment." *Battista v. United Illuminating Co.*, 10 Conn. App. 486, 493 (Conn. App. Ct. 1987); *Cruz v. Behnke*, 3:04CV1119 (DJS), 2006 WL 860104, at *2 (D. Conn. Mar. 31, 2006) (citing same); *Hauer v. E. Conn. Health Network*, CV094046119S, 2010 WL 4884688, at *3 (Conn. Super. Ct. Oct. 29, 2010) (same).  In the case of a statement that is defamatory *per se*, injury to a plaintiff's reputation is conclusively presumed such that a plaintiff need neither plead nor prove it.  *Spears v. Elder*, 124 Conn. App. 280, 289 n.6 (Conn. App. Ct. 2010); *Savage v. Andoh*, NNHCV075015657S, 2013 WL 951173, at *7 (Conn. Super. Ct. Feb. 6, 2013); *Tax Data Solutions*, 2013 WL 951151.  In such case, "[t]he individual plaintiff is entitled to recover, as general damages, for the injury to his reputation and for the humiliation and mental suffering which the [defamation] caused him." *DeVito v. Schwartz*, 66 Conn. App. 228, 235 (Conn. App. Ct. 2001).[1]   Whether a statement is defamatory per se is a question of law for the court.  *Gambardella*, 86 Conn. App. at 850.

Lastly, truth is an absolute defense to an allegation of defamation.  *See, e.g.*, *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 112 (Conn. 1982); *Thibodeau v. Am. Baptist Churches of Conn.*, 120 Conn. App. 666, 678-79

---

[1] Further as to damages, "if the defamatory material is defamation per se, the jury may award the plaintiff general damages without any further proof thereof, special damages if proven and punitive damages as a matter of discretion. Where defamation per se has been established, a plaintiff should receive at least nominal damages though not necessarily anything more." *DeVito*, 66 Conn. App. at 236.

(Conn. App. Ct. 2010) ("Truth is a defense to defamation"); *Mercer*, 110 Conn. App. at 301; *Rafalko*, 129 Conn. App. at 53.

"Although it is true that for a claim of defamation to be actionable, the statement must be false … and under the common law, truth is an affirmative defense to defamation … the determination of the truthfulness of a statement is a question of fact for the jury.  As a defense, truth provides protection against liability, but not against the expense and inconvenience of being sued." *Cweklinsky*, 267 Conn. at 228-29.  Moreover, a defendant need not establish the literal truth of the allegedly defamatory statement; rather, substantial truth provides an affirmative defense: "[w]here the main charge, or gist, of the libel [or defamation] is true, minor errors that do not change a reader's perception of the statement do not make the statement actionable." *Strada v. Connecticut Newspapers, Inc.*, 193 Conn. 313, 322 (Conn. 1984) (internal quotation marks and citation omitted); *see also Woodcock v. Journal Pub. Co., Inc.*, 230 Conn. 525, 554 (Conn. 1994) ("A defendant will not be held liable as long as the statements at issue are substantially true.").  "The issue is whether the libel [or slander], as published, would have a different effect on the reader [or listener] than the pleaded truth would have produced." *Goodrich*, 188 Conn. at 113; *see also Pollack v. Eitelberg*, CV095011274S, 2012 WL 6634693 (Conn. Super. Ct. Nov. 30, 2012) (same).

a.  <u>Substantial Falsity</u>

Defendants claim that this action must be dismissed in its entirety because the complaint fails to allege that the subject statements are substantially false, and thus the Plaintiff has not met the first element of a prima facie case of defamation.  Rather, Defendants contend that Grace's and Karas's statements were substantially true; "the error allegedly made during the colloquy between Grace and Karas" – that Skakel's DNA in the form of sperm was found in a tree outside Martha Moxley's window – "does not materially alter the gist of their comments," which was that Skakel "masturbated outside of Martha Moxley's window the night of the murder, so his DNA was necessarily at the scene."  [Dkt. 11, Ds' MTD, pp. 9-10].  Defendants argue that whether trial evidence showed that police found Skakel's DNA at the scene does not alter the crux of the statement – that Skakel was at the scene the night of the murder.  [*Id.* at pp. 10-11].  Thus, they contend, "the impact of the literal truth" that no DNA evidence from Skakel was found at the scene would be no different than the impact of Grace's and Karas's statement that Skakel's DNA *was* found at the scene to a reasonable viewer or reader, given trial testimony that placed Skakel in a tree outside Martha Moxley's window on the night of the murder.  [*Id.* at p. 11].  The Plaintiff counters that Grace's and Karas's statements are patently false as they misstate and/or imply a misstatement of the evidence against the Plaintiff in his murder prosecution.

Defendants' argument as to substantial truth must fail at this stage of the litigation.  The Plaintiff has met the first element of a prima facie case of defamation because the complaint plainly alleges that Karas's and Grace's

statements were not only substantially false, they were literally false.  Skakel has cited Karas' and Grace's representations to their program audience that each had first-hand familiarity with the in court testimony and evidence presented at Skakel's trial.  Despite allegedly knowing that no DNA evidence linked Skakel to Martha Moxley's murder, and despite that Skakel's DNA was allegedly not found anywhere on the victim's body or clothing or at the scene of the crime, Skakel and Grace published a statement to a wide audience that the Plaintiff's DNA in the form of sperm was *found* in a tree outside of Martha Moxley's window.  Although the Defendants contend to the contrary, at this stage of the litigation and accepting as true the allegations in the complaint, the Court may not ignore the patent falsity of the Karas/Grace colloquy that Skakel's DNA was *found* at the scene.  Where no such DNA evidence was found, a statement to the contrary is not just a minor inaccuracy that does not alter the underlying meaning of the reporting.  Rather, the distinction between hard scientific evidence found at the scene of a murder and lack of any DNA evidence is stark.  Skakel has specifically pled that no DNA was found at the scene of Martha Moxley's murder and that no evidence at trial claimed that DNA was found at the scene.  Grace's and Karas's colloquy directly contradicts the actual evidence presented at trial.  The Plaintiff has thus successfully pled at this stage of litigation the patent falsity of the subject statements.

The Defendants further contend that "[c]ourts routinely dismiss cases where the reported facts allegedly differ from the literal truth, but not in any way that has a material impact on the defamatory sting of the statement."  Defendants

**13**

have cited to only two Connecticut cases to support this proposition, both of which are inapposite, as both were decided on a fully developed record upon summary judgment. *See Strada v. Conn. Newspapers, Inc.*, 193 Conn. 313 (Conn. 1984) (affirming grant of *summary judgment* in favor of defendants where record substantiated the factual basis for the allegedly defamatory newspaper article and proved the statements to be at least substantially true); *Mercer v. Cosley*, 110 Conn. App. 283, 955 (Conn. App. Ct. 2008) (affirming grant of *summary judgment* in favor of defendants on libel claim on the basis of the statements' literal truth). Defendants have cited to no cases based on Connecticut law in which a defamation claim was dismissed upon an undeveloped record, an affirmative defense of substantial truth, and patently false public statements. Defendants also rely on a plethora of cases that hail from states or circuits whose laws are neither binding on this Court nor explained by Defendants (and many of which were also disposed of at a later stage of litigation).[2] While the Defendants are correct that truth is an affirmative defense to defamation, they have provided no basis on which the Court can dismiss the Plaintiff's claims at such an early stage of litigation and before the development of a full record, where the Plaintiff has also successfully alleged that the statements were *prima facie* false. In this

---

[2] The following out of jurisdiction cases cited by Defendants were disposed of on summary judgment: *Nichols v. Moore*, 396 F. Supp. 2d 783 (E.D. Mich. 2005) aff'd, 477 F.3d 396 (6th Cir. 2007); *Rouch v. Enquirer & News of Battle Creek Michigan*, 440 Mich. 238, 487 N.W.2d 205 (Mich. 1992); *Anderson v. Cramlet*, 789 F.2d 840 (10th Cir. 1986); *Anderson v. Stanco Sports Library, Inc.*, 542 F.2d 638 (4th Cir. 1976); *Drury v. Feeney*, 505 So. 2d 111 (La. Ct. App. 1987) writ denied, 506 So. 2d 1225 (La. 1987). The Defendants have not expounded on the similarity between the common law of defamation in any of the foregoing districts and Connecticut's common law of defamation, or whether any crucial differences exist.

context it would be inappropriate for this Court to opine on the substantial veracity of the Defendants' statements.  *See Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 228-29, 837 A.2d 759, 770 (Conn. 2004) ("Although it is true that for a claim of defamation to be actionable, the statement must be false; . . . and under the common law, truth is an affirmative defense to defamation; . . . the determination of the truthfulness of a statement is a question of fact for the jury. As a defense, truth provides protection against liability, but not against the expense and inconvenience of being sued.") (internal citations omitted); *Woods v. Connection, Inc.*, MMXCV116005322S, 2012 WL 1592162 (Conn. Super. Ct. Apr. 11, 2012) (holding that, where a plaintiff had sufficiently alleged a false and defamatory statement, "[w]hether the statement is true is an affirmative defense to be considered by the jury, and not a question of law which may be decided by [the Connecticut equivalent of a Fed. R. Civ. P. 12(b)(6) motion]"); *Mauer v. Gadiel*, CV020087357S, 2004 WL 2164947 (Conn. Super. Ct. Aug. 27, 2004) ("The plaintiff claims that the statements made in the letter are untrue and were made recklessly, without regard to the truth or falsity, with the intent to harm the plaintiff. Whether the statements are true is a question of fact. Therefore the defendants are not entitled to summary judgment on this basis.").

In sum, the Plaintiff has sufficiently alleged that the Defendants' published statements were false.  It is premature for this Court to consider the substantial truth of the allegedly defamatory statements absent a developed record upon which to conduct a reasoned and thoughtful analysis, and where Mr. Skakel has sufficiently pled the falsity of the subject statements.

Defendants' motion to dismiss on the basis of substantial truth is DENIED.

   b. <u>Subsidiary Meaning Doctrine</u>

Defendants also submit that Plaintiff's claims must be dismissed because they are negated by the subsidiary meaning doctrine, as the presence or absence of DNA evidence is only defamatory to the extent that it supports the larger implication that Skakel is guilty of murder, an implication on which Skakel cannot base a defamation claim because he was found guilty of murder. The Plaintiff counters that the subsidiary meaning doctrine is inapplicable because he is not a public figure, the statements were not matters of public concern, and application of this doctrine at the motion to dismiss stage is inappropriate.

The subsidiary meaning doctrine, applicable to public figure plaintiffs, was first applied by the Second Circuit in *Herbert v. Lando*, 781 F.2d 298 (2d Cir. 1986), cert. denied, 476 U.S. 1182 (1986), in which the Court held that where a particular published view is not actionable as defamation, "other statements—even those that might be found to have been published with actual malice—should not be actionable if they merely imply the same view, and are simply an outgrowth of and subsidiary to those claims upon which it has been held there can be no recovery." 781 F.2d at 312. In other words, "where a maliciously false statement implies the same ultimate conclusion as that of the remainder of the publication, which has been published without actual malice, a plaintiff cannot 'base his defamation action solely on inaccuracies contained within statements subsidiary to these larger views.'" *Church of Scientology Int'l v. Time Warner, Inc.*, 932 F.

Supp. 589, 594 (S.D.N.Y. 1996) aff'd sub nom. *Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001) (quoting *Herbert*, 781 F.2d at 312).  The subsidiary meaning doctrine is "merely a gloss on constitutional actual malice" under the First Amendment and is thus a question of federal constitutional law, not state law.  *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 176 (2d Cir. 2001).

For the subsidiary meaning doctrine to apply to this case, Mr. Skakel must be a public figure or the Defendants' statements must implicate a matter of public concern such that the actual malice pleading standard applies to Skakel's claims. The Defendants contend that because Skakel is a convicted murderer he is a public figure, a notion the Plaintiff rejects.  Based on the record before the Court, the Court cannot conclude that Mr. Skakel is a de facto public figure as the Defendants contend, nor have the Defendants presented sufficient evidence that Skakel's presence at a sentence review hearing was a matter of public concern.

The Supreme Court has posited that

> Hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare. For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974).  The characterization of a plaintiff as a public figure may rest on two bases: "[i]n some instances an individual may achieve such pervasive fame or notoriety that he becomes a

public figure for all purposes and in all contexts.  More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351.  Thus, in determining whether an individual is a public figure, courts must look to "the nature and extent of an individual's participation in the particular controversy giving rise to the defamation."  *Id.* at 352; *Fuller v. Day Pub. Co.*, 030565104, 2004 WL 424505 (Conn. Super. Ct. Feb. 23, 2004) aff'd, 89 Conn. App. 237, 872 A.2d 925 (2005), cert. denied 275 Conn. 921 (2005) (same); *Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123, 136-37 (2d Cir. 1984) (same); *Cox v. Galazin*, 460 F. Supp. 2d 380, 389 (D. Conn. 2006) (same).  The Second Circuit has identified four factors for determining whether an individual is a limited purpose public figure.  A defendant must show that a plaintiff has (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media. *Lerman*, 745 F.2d at 136-37; *Stack v. Jaffee*, 248 F. Supp. 2d 100, 106 (D. Conn. 2003) (same).

Individuals who have been accused or convicted of crimes may be classified as public figures.  *See, e.g.*, *Fuller v. Day Pub. Co.*, 030565104, 2004 WL 424505 (Conn. Super. Ct. Feb. 23, 2004) aff'd, 89 Conn. App. 237, 872 A.2d 925 (2005), cert. denied 275 Conn. 921 (2005) (plaintiff was a limited purpose public figure where she "voluntarily injected herself into the limelight by committing a

crime," "invited public comment relating to her involvement in a high profile criminal case concerning a [ ] Superior Court judge"); *Zupnik v. Associated Press Inc.*, 31 F. Supp. 2d 70, 72 (D. Conn. 1998) (for purpose of defamation action, wife, whose husband was a doctor who engendered intense media attention and public interest because of allegations of his criminal conduct and professional negligence and was a public figure, was herself an involuntary public figure by virtue of her marriage to him). Indeed, in the context of a false light invasion of privacy claim, this court has found that "[a] prisoner becomes a public figure by virtue of his crime and subsequent trial. He remains a public figure during his imprisonment or until he has reverted to the lawful and unexciting life led by the great bulk of the community." *Travers v. Paton*, 261 F. Supp. 110, 117 (D. Conn. 1966) (prisoner who was secretly filmed during parole hearing was public figure).

However, the Supreme Court has rejected the contention "that any person who engages in criminal conduct automatically becomes a public figure for purposes of comment on a limited range of issues relating to his conviction." *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 168 (1979). The Supreme Court has cautioned that

> … while participants in some litigation may be legitimate 'public figures,' either generally or for the limited purpose of that litigation, the majority will more likely resemble respondent, drawn into a public forum largely against their will in order to attempt to obtain the only redress available to them or to defend themselves against actions brought by the State or by others. There appears little reason why these individuals should substantially forfeit that degree of protection which the law of defamation would otherwise afford them simply by virtue of their being drawn into a courtroom. The public interest in accurate reports of judicial proceedings is

**19**

> substantially protected by *Cox Broadcasting* [*v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975)]. As to inaccurate and defamatory reports of facts, matters deserving no First Amendment protection, [ ] we think *Gertz* [*v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)] provides an adequate safeguard for the constitutionally protected interests of the press and affords it a tolerable margin for error by requiring some type of fault.

*Time, Inc. v. Firestone*, 424 U.S. 448, 457 (1976); *Wolston*, 443 U.S. at 168-69

(quoting same). "To hold otherwise would create an 'open season' for all who

sought to defame persons convicted of a crime." *Wolston*, 443 U.S. at 169.

While it is possible that Skakel will be deemed to be a public figure in the

future, the record before this Court is insufficient to support this conclusion at

this point. The Defendants contend that "[t]here can be no serious dispute the

plaintiff is a public figure" and that he was "convicted of murder in a highly

controversial prosecution and at a highly public trial," but the Defendants bear

the burden of so proving. [Dkt. 11, p.14 n.5; dkt. 17, p.4]. The Defendants here,

however, have offered only conclusory statements that the Plaintiff is a public

figure and have failed to support these assertions. The Court cannot rely on

extra-judicial facts to conclude at the motion to dismiss stage that the Defendants

have carried their burden such that the subsidiary meaning doctrine should

apply. *See, e.g., Wilkinson v. Schoenhorn*, X03960499266CLD, 2001 WL 420373

(Conn. Super. Ct. Apr. 10, 2001) (summary judgment denied where parties

disagreed as to nature and extent of attorney plaintiff's participation in the

controversy giving rise to the defamation, which consisted of attorney making

statement regarding kidnapping case to the media).

Even if Skakel is a public figure, though, the Court declines to dismiss this action on the basis of the subsidiary meaning doctrine.  Having determined that the statements between Grace and Karas were actually false, this Court cannot at this juncture conclude that the implication that hard DNA evidence underscored Skakel's murder conviction when no such evidence existed is simply subsidiary to the larger implication that he was, indeed, convicted of murder.  The Defendants' contention that their statements regarding DNA implied the same view as did Skakel's murder conviction generally is false.  While Skakel was convicted of murder, he was allegedly so convicted absent any DNA evidence linking him to the crime.  Grace's and Karas's comments are not merely a gloss on Skakel's conviction; their statements imply that hard, unfeeling, scientific, and direct evidence linked Skakel to the scene and conclusively corroborated his guilt, when such scientific certainty did not exist.  This falsity is not subsidiary to Skakel's conviction, especially in the context of a Sentence Review Hearing, a hearing procedure at which Skakel argued that his sentence was wrongful and/or subject to reduction.[3]

---

[3] The Court notes that the Plaintiff also argues that Defendants' statements "amounted to an accusation against the Plaintiff of additional crimes, and acts of moral turpitude; that which is interjected is completely unnecessary and/or unrelated to the murder conviction."  [Dkt. 16-1, p.14].  While the Court is skeptical of Plaintiff's argument that the subsidiary meaning doctrine does not apply because the Defendants' statements implied further crimes, it is unnecessary to address this point because the Court has found that the subsidiary meaning doctrine does not apply for separate reasons.

The Defendants have also argued that any such additionally implied crimes would be privileged because the Defendants were merely reporting on trial testimony. They have argued this point only conclusorily in their reply brief, however, and as such the Court will not address this issue.  [Dkt. 17, p. 6].

This conclusion is particularly apt because the assertion that Skakel's DNA was found near the Moxley crime scene not only is unquestionably false, it is also materially false.  The presence of DNA at a crime scene is the type of evidence upon which most people would rely and would erase any notion of innocence. DNA evidence alone has resulted in highly publicized exonerations of convicted individuals.  The representation of two celebrated attorneys who attended Skakel's trial that Skakel's DNA was found near the crime scene would tend to solidify and validate Mr. Skakel's guilt in the minds of those who agreed with the jury verdict and erase any skepticism or doubt as to his guilt in the minds of those who questioned or disagreed with the verdict.  While a guilty verdict is usually dispositive of guilt as a matter of law, a jury verdict is not dispositive of guilt in the court of public opinion.  To illustrate this point one need only contrast the conclusions of the courts of justice with the conclusion of the courts of public opinion in the OJ Simpson, George Zimmerman, and Michael Dunn cases. In a defamation case the forum is the court of public opinion; that is, the focal point is public sentiment and not a legal principal.  The subsidiary meaning doctrine is therefore unavailing.

     c.  <u>Incremental Harm Doctrine</u>

The Defendants further urge the Court to dismiss Skakel's defamation claims because "the specific falsity he alleges caused no actionable harm in the context of the Report as a whole," and thus any incremental harm to Skakel's reputation is insufficient to sustain a claim for libel.  [Dkt. 11, p. 16].  The Plaintiff counters that this incremental harm doctrine is inapplicable because the

Defendants fail to acknowledge the harm that Grace's and Karas's comments may have caused to Plaintiff's future parole applications, trial prospects, and other discretionary benefits.  Skakel also argues that it is unclear if this doctrine is recognized under Connecticut law.

The incremental harm doctrine "reasons that when unchallenged or nonactionable parts of a particular publication are damaging, another statement, though maliciously false, might be nonactionable on the grounds that it causes no harm beyond the harm caused by the remainder of the publication." *Church of Scientology Int'l v. Time Warner, Inc.*, 932 F. Supp. 589, 593-94 (S.D.N.Y. 1996) aff'd sub nom. *Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001).  A plaintiff's reputation may thus be "so badly damaged by true statements in a particular publication that minor false accusations within the same publication cannot result in further meaningful injury."  *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986).  The doctrine thus "measures the incremental harm inflicted by the challenged statements beyond the harm imposed by the rest of the publication.  If that harm is determined to be nominal or nonexistent, the statements are dismissed as not actionable."  *Herbert v. Lando*, 781 F.2d 298, 311 (2d Cir. 1986).

Unlike the subsidiary meaning doctrine, the incremental harm doctrine does not implicate the First Amendment and is instead a creature of state law. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 523 (1991) ("we reject any suggestion that the incremental harm doctrine is compelled as a matter of First Amendment protection for speech.  The question of incremental harm does not

bear upon whether a defendant has published a statement with knowledge of falsity or reckless disregard of whether it was false or not."); *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 176 (2d Cir. 2001).  This doctrine has been applied by at least two courts within this state, but neither the Connecticut Appellate nor Supreme Court has visited the issue.  *See Jones v. Globe Int'l Inc.*, 3:94:CV01468 (AVC), 1995 WL 819177, at *10 (D. Conn. Sept. 26, 1995) (granting summary judgment where gravamen of allegedly libelous articles portrayed the plaintiff, convicted of knowingly entering and remaining unlawfully in the dwelling of Marla Maples Trump, possessing property not his own, and possessing a firearm, as a criminal with a sexual attraction to women's shoes, where plaintiff testified that he had a fascination with women's shoes which was partly sexual in nature, and concluding that the remaining statements – that plaintiff had stolen Trump's undergarments and photos and that he wore her shoes, among others – were not actionable because the true portions of publications were so damaging that plaintiff could not prove damages necessary to prevail on libel claim); *Allan v. Hartford Courant*, CV000599993S, 2001 WL 291162 (Conn. Super. Ct. Mar. 8, 2001) (holding that plaintiff police officer who was the object of media articles could assert incremental harm defense, and denying motion to strike which asserted that defense was not recognized under Connecticut law).

Regardless of whether the incremental harm doctrine exists under Connecticut law, and this Court declines to posit an opinion on the matter, it is not possible at this point to conclude that the harm from the statements to Mr. Skakel is merely incremental such that this case should be dismissed.  Grace's

and Karas's colloquy did not contain a "minor, false accusation."  Rather, it contained an allegedly patently false misstatement of fact that has the potential to alter the public's view of the evidence against Mr. Skakel, thus potentially injuring his future chances to rehabilitate his character and or avail himself of the court system absent the public's false understandings of the nature of the evidence against him.  The Second Circuit has cautioned that the libel-proof plaintiff doctrine, of which the incremental harm doctrine is sometimes asserted to be a part, "is to be applied with caution, [ ] since few plaintiffs will have so bad a reputation that they are not entitled to obtain redress for defamatory statements, even if their damages cannot be quantified and they receive only nominal damages."  *Guccione*, 800 F.2d at 303.  Only where "an allegedly libelous statement cannot realistically cause impairment of reputation because the person's reputation is already so low or because the true portions of a statement have such damaging effects," should the claim be dismissed "so that the costs of defending against the claim of libel, which can themselves impair vigorous freedom of expression, will be avoided."  *Id.*  The record in this case is as yet undeveloped and the Court cannot conclude with certainty that the Defendants' statements cannot realistically impair Mr. Skakel's reputation.  Application of the incremental harm defense to dismiss this action at this stage of litigation is improper, but appears unlikely on the current record to be availing for the reasons stated above in the Court's analysis of the Defendants' substantial falsity argument.

      d.  **Libel and Slander *Per Se***

Although the record appears to indicate that the Defendants concede that the statements at issue were false, the Defendants have not addressed the Plaintiff's defamation *per se* claims independently of the arguments for dismissal discussed above.  Thus, the Court need not consider whether dismissal of these claims is proper at this time.

### e.   <u>False Light Invasion of Privacy</u>

Lastly, the Defendants claim that Plaintiff's false light invasion of privacy claim must fail because (1) the Plaintiff has not pleaded that the Defendants' statements were false in any material respect, and (2) Skakel may not bring a claim for damages based on the publication of allegedly false material when a defamation claim, based on the same material, fails.  [Dkt. 11, p.18].  As Skakel's false light claim is based upon the same facts as his defamation claims, which Defendants contend must fail, so too must Plaintiff's false light claim.  As the Court has concluded that Plaintiff's defamation claims remain cognizable at this stage of litigation, the Defendants' motion to dismiss the Plaintiff's false light invasion of privacy claim is DENIED.

### V.     <u>Conclusion</u>

For the foregoing reasons, Defendants' [Dkt. #10] Motion to Dismiss the Complaint is DENIED.

**IT IS SO ORDERED.**

_____/s/_____
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: March 7, 2014**